```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
DOROTHY NESKE and CHRISTOPHER                      :
NESKE, as Parents and Natural Guardians of         :
A.N., and DOROTHY NESKE and                        :
CHRISTOPHER NESKE, Individually,                   :
                                                   :
                              Plaintiffs,          :
              -against-                            :
                                                   :
                                                   :
NEW YORK CITY DEPARTMENT OF                        :
EDUCATION,                                         :
                              Defendant.           :
-------------------------------------------------------------- X
```
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/02/2019
```

19-CV-2933 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

The parents and guardians of a minor, A.N., seek an order compelling the New York City Department of Education ("the City") to fund A.N.'s attendance at the International Institute for the Brain ("iBrain"), a private school for children with special needs. Plaintiffs have moved for a preliminary injunction ordering the City to provide funding pursuant to 20 U.S.C. § 1415(j), the so-called "stay put" or "pendency" provision of the Individuals with Disabilities Education Act ("the IDEA"). The City has moved to dismiss Plaintiffs' complaint on procedural grounds and on the merits. For the reasons discussed below, the City's motion to dismiss is GRANTED.

I. **BACKGROUND**

The pertinent facts are undisputed. A.N. is an eight-year-old boy who has learning disabilities caused by a brain injury. Compl. (Dkt. 1) ¶¶ 7–8. In 2017, Plaintiffs disagreed with A.N.'s Individualized Education Program ("IEP") for the 2017–18 school year and unilaterally enrolled him at the International Academy of Hope ("iHope"). Finkelstein Findings of Fact and Decision ("FOFD") (Dkt. 17-2) at 3. Plaintiffs then sought reimbursement from the City for A.N.'s tuition and other costs of attendance. *Id.*; Compl. ¶¶ 9–10. On March 6, 2018, an

Impartial Hearing Officer (IHO), Sharyn Finkelstein, agreed with Plaintiffs that the City had not developed an appropriate IEP for the '17–18 term, determined that iHope provided an appropriate program for A.N., and ordered full reimbursement for the cost of his attendance. FOFD at 10; Compl. ¶ 10.

That resolution was short-lived. On June 21, 2018, Plaintiffs notified the City that it had not offered A.N. a program or placement that will address his educational needs and therefore they intended to move A.N. from iHope to iBrain, which appears to be a newly-opened offshoot or competitor of iHope. Rosken Decision (Dkt. 17-6) at 7; Compl. ¶ 12. A.N. has been attending iBrain since July 9, 2018, when the school first opened its doors. Rosken Hearing Tr. (Dkt. 17-5) at 46; Compl. ¶ 13. On the day that A.N. began attending iBrain, Plaintiffs filed a due process complaint against the City, alleging that A.N. had not been offered a free and appropriate public education (FAPE) for the 2018–19 school year and requesting a so-called "stay-put" or pendency order for A.N. at iBrain. Compl. ¶ 14. A pendency order would require the City to fund A.N.'s tuition and related costs at iBrain while Plaintiffs' due process complaint was being resolved. *See* 20 U.S.C. § 1415(j); *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015).

At an evidentiary hearing on October 9, 2018, Plaintiffs argued to IHO Brad Rosken that they were legally entitled to transfer funding from iHope[1] to any other "substantially similar" program, such as iBrain. Compl. ¶ 16. IHO Rosken disagreed; he concluded that Plaintiffs may not port their funding to another school if the child's previously agreed-upon placement, here iHope, is still available. Rosken Decision at 7. Because iHope remained an available option,

---

[1] The City had proposed a public school placement for A.N. for the 2018–19 school year. Dkt. 17-4. There appears to be no dispute that the parents could have challenged the City's proposal to educate A.N. in a public school and would have obtained a stay put order that would have resulted in the City paying A.N.'s tuition at iHope while the parent's appeal was being processed.

IHO Rosken concluded that the "substantially similar" principle was irrelevant and, accordingly, declined to determine whether the programs at iHope and iBrain were, in fact, "substantially similar." *Id.* at 7–8. On that basis, IHO Rosken denied Plaintiffs' request for interim funding of A.N.'s placement at iBrain, and instead directed the City to fund A.N.'s placement at iHope. *Id.* at 10; Compl. ¶ 17.

On November 21, 2018, Plaintiffs appealed IHO Rosken's decision to the State Review Officer (SRO). Krolak Decision (Dkt. 27-2) at 7–8. On December 21, 2018, the SRO dismissed Plaintiffs' appeal as untimely because, absent a showing of good cause, an appeal from the IHO decision had to be taken within 40 days, which would have been November 19, 2018. *Id.* The SRO noted that Plaintiffs would have another opportunity to challenge the pendency decision, which had been issued on an interim basis, as part of their appeal of the IHO's final decision on A.N.'s due process complaint. *Id.* at 8.

More than four months later, Plaintiffs commenced this action, seeking vacatur of the IHO decision. Compl. at 5–6. The Complaint does not challenge the SRO decision directly. *See generally id.* On May 23, 2019, the City moved to dismiss. Dkt. 13. On May 29, 2019, nearly two months after commencing this action, Plaintiffs moved for a preliminary injunction directing the City to fund A.N.'s attendance at iBrain. Dkt. 16. Based on the Court's review of cases in this district, Plaintiffs are at least the seventh family to seek a pendency order after unilaterally moving their child from iHope to iBrain in the past year.

## II. DISCUSSION

The Court addresses the City's motion to dismiss first because it is dispositive of Plaintiffs' motion for injunctive relief and Plaintiffs' overall case. The City argues that Plaintiffs' case should be dismissed because of (1) failure to exhaust administrative remedies, (2)

3

lack of standing, (3) untimeliness, and (4) failure to state a claim. *See generally* Def. Br. (Dkt. 14). The Court rejects the City's arguments as to exhaustion and standing and declines to rule on timeliness, but agrees that Plaintiffs have failed to state a claim upon which relief may be granted.

### A. Administrative Exhaustion

Although the City claims that Plaintiffs failed to exhaust their administrative remedies by not taking a timely appeal of IHO Rosken's decision to the SRO, Plaintiffs' action is exempt from the exhaustion requirement. Ordinarily, a "plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) (citing *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995)); *B.C. ex rel. B.M. v. Pine Plains Cent. Sch. Dist.*, 971 F. Supp. 2d 356, 365 (S.D.N.Y. 2013) ("Courts in this Circuit have held that—absent good cause shown—a party who fails to make a timely appeal to the SRO, or fails to timely serve the respondent, has failed to satisfy the exhaustion requirement." (collecting cases)). The exhaustion requirement, however, as Plaintiffs point out, does not apply to actions that seek a pendency or "stay-put" order, which the Second Circuit views to be a form of emergency relief. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002).

In *Murphy*, the Second Circuit held that "an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to" exhaustion. *Id.* ("Congress specified that exhaustion is not necessary if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies."). While the City attempts to distinguish *Murphy*

on the merits as being a case that involved an actual risk of interruption of the child's education, whether Plaintiffs' claim is likely to succeed has nothing to do with the threshold jurisdictional question.[2] *See id.* ("The administrative process is inadequate to remedy violations of [20 U.S.C.] § 1415(j) because, given the time-sensitive nature of the IDEA's stay-put provision, an immediate appeal is necessary to give realistic protection to the claimed right." (citation omitted)). Indeed, pendency relief pursuant to § 1415(j) must be decided without regard to the traditional injunction factors, such as irreparable harm and likelihood of success on the merits. *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). To require a showing that a child's education may be interrupted in order to trigger this Court's subject-matter jurisdiction would, therefore, be contrary to the purpose and design of § 1415(j).

Accordingly, the Court concludes that Plaintiffs were not required to administratively exhaust their claims before pursuing this action.

### B. Standing

Although a close issue, the Court finds that Plaintiffs have standing to maintain this action. "[T]o satisfy the core requirements derived from Article III, a plaintiff must allege: (1) personal injury or threat of injury; (2) that the injury fairly can be traced to the action challenged; and (3) that the injury is likely to be redressed by the requested relief." *Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148, 154 (2d Cir. 1992). The City argues that Plaintiffs lack standing because Plaintiffs have not alleged an injury and, to the extent that any injury exists, it was caused by Plaintiffs' unilateral decision to transfer A.N. to iBrain. As other courts have recognized under

---

[2] Nor is this case only seeking reimbursement following the completion of all administrative proceedings. *Cf. M.M. ex rel. J.M. v. New York City Dep't of Educ.*, No. 09-CV-5236, 2010 WL 2985477, at *10 (S.D.N.Y. July 27, 2010) (holding that *Murphy* does not extend to § 1415(j) claims seeking reimbursement after conclusion of challenge to child's placement).

5

similar circumstances, however, a denial of "stay-put" creates an injury sufficient for Article III purposes.

In a non-binding, unpublished decision, the Second Circuit described the "stay-put" provision as creating a procedural right. *See A.S. ex rel. P.B.S. v. Bd. of Educ. for Town of W. Hartford*, 47 F. App'x 615, 616 n.2 (2d Cir. 2002); *Navarro Carrilo v. New York City Dep't of Educ.*, No. 19-CV-2944, 2019 WL 2511233, at *9 (S.D.N.Y. June 13, 2019). Even if the right to "stay put" is procedural, rather than substantive, Plaintiffs must still allege the existence of a concrete interest that has been or is likely to be harmed by the procedural violation. *See Massachusetts v. E.P.A.*, 549 U.S. 497, 517–18 (2007) ("[A] litigant to whom Congress has accorded a procedural right to protect his concrete interests—here, the right to challenge agency action unlawfully withheld—can assert that right without meeting all the normal standards for redressability and immediacy." (citations omitted)); *de Paulino v. New York City Dep't of Educ.*, No. 19-CV-222, 2019 WL 1448088, at *3 (S.D.N.Y. Mar. 20, 2019), *reconsideration denied sub nom. Ventura De Paulino v. New York City Dep't of Educ.*, No. 19-CV-222, 2019 WL 2498206 (S.D.N.Y. May 31, 2019) ("[T]he violation of a procedural right granted by statute can be sufficient . . . to constitute injury in fact, as long as the violation entails a degree of risk sufficient to indicate a resulting concrete harm." (quotation marks omitted) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549–50 (2016))).

At least two concrete interests may be at stake in "stay-put" cases. The first is the risk of disruption of the child's educational program. *See Cohen v. New York City Dep't of Educ.*, No. 18-CV-11100, 2018 WL 6528241, at *1 (S.D.N.Y. Dec. 12, 2018). In this case, Plaintiffs do not allege that the denial of "stay put" has had or will have any impact on A.N.'s ongoing or future attendance at iBrain, nor do they make any such argument in their briefing. *See* Compl. ¶¶ 18–

24; Pl. Opp. Br. (Dkt. 24) at 6. Because there is no apparent risk of any negative impact on A.N.'s education caused by the denial of a pendency order, Plaintiffs have not demonstrated a concrete injury on this basis. *See Cohen*, 2018 WL 6528241, at *1 (finding lack of "actual or imminent" harm because no indication that child was at risk of expulsion from iBrain).

Alternatively, parents and guardians may have a concrete interest in avoiding out-of-pocket payments for their child's tuition and related costs. As other courts in this District have concluded, the likelihood that a parent or guardian will incur personal financial obligations, due to the lack of interim funding from the school district, is sufficient to create an injury for standing purposes. *Cruz v. New York City Dep't of Educ.*, No. 18-CV-12140, 2019 WL 147500, at *6 (S.D.N.Y. Jan. 9, 2019) ("The Second Circuit has stated that a plaintiff's 'contractual obligation to pay private-school tuition . . . even if her IDEA claim against [DOE] fails to result in funding' is sufficient to establish an injury in fact for standing purposes." (quoting *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 457, 459 (2d Cir. 2014))); *see also de Paulino*, 2019 WL 1448088, at *4 (same). Although Plaintiffs have not submitted a copy of A.N.'s enrollment contract, the Court draws, at this stage, an inference in their favor that A.N.'s contract is similar to those in other cases involving iHope-to-iBrain transferees. iBrain's enrollment contracts appear to defer any obligation to pay tuition until administrative proceedings have been resolved—and in the event of an unfavorable resolution, parents may withdraw their children from iBrain and enter into an individualized payment plan for fees incurred prior to such withdrawal. *See, e.g.*, *de Paulino*, 2019 WL 1448088, at *3–4; *Cruz*, 2019 WL 147500, at *6–7; *Cohen*, 2018 WL 6528241, at *2. Because the absence of a pendency order may result in Plaintiffs having to pay iBrain for at least some portion of A.N.'s tuition, the Court finds that

7

Plaintiffs have demonstrated a concrete harm arising out of the City's refusal to provide pendency at iBrain.

That injury is also fairly traceable to the City. While the City claims that the injury is caused by Plaintiffs' unilateral decision to transfer A.N. to iBrain, the traceability analysis does not require a defendant's actions to be the exclusive or even proximate cause of the alleged injury. *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013). Here, Plaintiffs' alleged injury bears a causal nexus to the City's refusal to fund A.N.'s placement at iBrain. *See Navarro*, 2019 WL 2511233, at *11 (rejecting the City's argument that injury was not traceable to the City because of Plaintiffs' unilateral transfer to iBrain).

For those reasons, the Court finds that Plaintiffs have standing to seek a "stay-put" order.

### C. Timeliness

Section 1415(i)(2)–(3) allows a civil action to be brought in federal court by "[a]ny party aggrieved by the findings and decision" of a state or local educational agency in connection with an impartial due process hearing. In New York, such actions are subject to a four-month statute of limitations. N.Y. Educ. Law § 4404(3)(a); *see also Adler by Adler v. Educ. Dep't of State of N.Y.*, 760 F.2d 454, 459–60 (2d Cir. 1985) (interpreting previous iteration of the IDEA and applying analogous statute of limitations applicable to Article 78 proceedings in state court); *Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 242 n.1 (S.D.N.Y. 2000). Any time-bar under the IDEA is not jurisdictional, however, because the IDEA lacks a clear statement to that effect. *See United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015) ("[T]he Government must clear a high bar to establish that a statute of limitations is jurisdictional. In recent years, we have repeatedly held that procedural rules, including time bars, cabin a court's power only if Congress has clearly stated as much." (internal quotation marks and citation

omitted)); *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("A rule is jurisdictional [i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." (internal quotation marks and citation omitted)); *see also M.G. v. New York City Dep't of Educ.*, 15 F. Supp. 3d 296, 304 (S.D.N.Y. 2014) ("The IDEA's statute of limitations is an affirmative defense rather than a jurisdictional prerequisite.") (discussing IDEA's two-year limitation on commencing a due process complaint).

The City argues that Plaintiffs' attempt to seek judicial review is untimely because more than four months elapsed between IHO Rosken's initial decision and this lawsuit being filed. In contrast, Plaintiffs argue that, because a pendency decision is an interim order, it does not trigger the four-month statute of limitations until a final decision has been issued at the conclusion of the due process hearing. Plaintiffs are in the unusual position of arguing that pendency relief is so urgent that they must be allowed to seek immediate appeal without exhausting administrative avenues—yet they should nonetheless be allowed to dawdle for as long as they wish prior to seeking such relief. In the Court's view, the correct and most workable approach would be to calculate the statute of limitations from the agency's most recent decision on pendency relief, which, in this case, would be December 21, 2018, the date the SRO dismissed Plaintiffs' appeal. *See* Krolak Decision at 8.

In any event, the Court need not decide whether this action was timely filed because the IDEA's statute of limitations is not jurisdictional, and Plaintiffs, for the reasons discussed below, lose on the merits.

### D. Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v.*

*Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (citation omitted). When "ruling on a Rule 12(b)(6) motion, we accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). Plaintiffs claim that § 1415(j), the "stay-put" or "pendency" provision of the IDEA, requires the City to fund A.N.'s tuition and expenses at whatever school A.N. happens to attend, as long as the chosen school offers a program "substantially similar" to iHope's. For the reasons discussed below, the Court agrees with the City that § 1415(j) does not require school districts to provide a portable voucher—at least not when, as here, the original placement remains an available option.

Section 1415(j) provides that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." "To determine a child's 'then-current educational placement,' a court typically looks to: (1) 'the placement described in the child's most recently implemented IEP'; (2) 'the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked'; or (3) 'the placement at the time of the previously implemented IEP.'"[3] *E. Lyme Bd. of Educ.*, 790 F.3d at 452 (quoting *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004)). In this case, there is no question that the relevant "education placement" is the program set forth in IHO Finkelstein's Findings of Fact and Decision.

---

[3] The City argues that Plaintiffs have waived any alternative argument that iBrain should be considered the "operative placement" because that argument was not raised before the IHO. City Reply (Dkt. 29) at 7. Regardless of any waiver, the "operative placement" factor is inapplicable to these facts. *See Navarro*, 2019 WL 2511233, at *19 ("Courts tend to rely on the 'operative placement' factor in circumstances in which there was no prior-implemented IEP that might guide a determination of a 'current educational placement.'" (citation omitted)).

Although IHO Finkelstein's decision determined that iHope was an appropriate placement and ordered the City to fund A.N.'s attendance at iHope during the 2017–18 school year, FOFD at 11, Plaintiffs claim that the term "educational placement" is a functional definition. That is, "placement" refers to the features and services of the educational program that IHO Finkelstein set forth in her decision, which were available at iHope but could also be available at another school. Those features include, among others, a 6:1:1 class ratio, occupational therapy five times per week, physical therapy five times per week, and speech and language therapy four times per week. FOFD at 11. According to Plaintiffs, because the term "educational placement" is not tied to a particular physical location, Plaintiffs are entitled unilaterally to move A.N. to any other school offering, in their opinion, "substantially similar" services without any interruption in funding.

Plaintiffs' position finds support in Second Circuit precedent only by taking language out of context. The Second Circuit has indeed stated that the term "'[e]ducational placement' refers to the general educational program—such as the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009). And, on that theory, at least one family has successfully persuaded one judge in this district that a stay-put injunction is warranted based on the family's unilateral decision to move a student from one school to another. *See Navarro*, 2019 WL 2511233, at *3–4.

In this Court's view, however, Plaintiffs misinterpret the central principle behind the Second Circuit's decision. In *T.Y.*, although the Second Circuit did hold that "educational placement" refers to a student's general education program, the Court did so only to conclude that the IDEA does not require the school district to assign the student to any "specific school

11

location," as long as the assigned school meets the student's needs. *See* 584 F.3d at 420 ("[B]ecause there is no requirement in the IDEA that the IEP name a specific school location, T.Y.'s IEP was not procedurally deficient for that reason. We emphasize that we are not holding that school districts have carte blanche to assign a child to a school that cannot satisfy the IEP's requirements. We simply hold that an IEP's failure to identify a specific school location will not constitute a *per se* procedural violation of the IDEA."). Indeed, the Second Circuit specifically explained that parents may "participate" in the school-selection process; they may not, however, "veto" the school district's choice of location. *Id.* ("The parents' actions suggest that they seek a 'veto' over school choice, rather than 'input'—a power the IDEA clearly does not grant them.").

Plaintiffs now seek precisely that veto power. Under Plaintiffs' view of Section 1415(j), parents can unilaterally move the student to their preferred school, file a due process complaint against the district, and then seek automatic funding through a "stay-put" order. Moreover, Plaintiffs claim that this Court must simply accept as true their conclusory allegation that the new program is "substantially similar" to the previous one.[4] Pl. Opp. Br. at 4. If the Court were to grant a "stay-put" order based on that bare allegation, Plaintiffs would not be required to reimburse the City if they do not ultimately prevail in the due process proceeding. *See Fiallos v.*

---

[4] Even if the Court were to agree with Plaintiffs that they may port funding to any "substantially similar" program, the record is inadequate for the Court to conclude that iBrain and iHope are "substantially similar." Courts should have the assistance of agency expertise when evaluating educational placements. *Abrams v. Carranza*, No. 19-CV-4175, 2019 WL 2385561, at *4 (S.D.N.Y. June 6, 2019) ("[A] federal court should not make substantial similarity determinations in the first instance when the Independent Hearing Officer or State Review Officer did not do so."); *Cruz*, 2019 WL 147500, at *10 (remanding for factfinding on similarity of iHope and iBrain). Thus, Plaintiffs' conclusory allegations would not justify the injunctive relief they seek, and at minimum, the case would need to be remanded for further fact development as to the "substantial similarity" between the programs at iHope and iBrain. If the other iHope-to-iBrain cases in this district are any indication, reasonable minds can differ on whether the programs are substantially similar. *Compare Navarro*, 2019 WL 2511233, at *17 (reversing agency determination that iBrain and iHope are not substantially similar) *with Angamarca, v. New York City Dep't of Educ.*, No. 19-CV-2930, 2019 WL 3034912, at *9 (S.D.N.Y. July 11, 2019) (affirming agency determination that iBrain and iHope are not substantially similar and denying injunctive relief). Moreover, based on the limited evidence put before the IHO, at least at the time A.N. was first enrolled at iBrain, it appears it was not fully staffed and may have been incapable of delivering all of the services required by A.N.'s IEP. Rosken Hearing Tr. at 47–52.

*New York City Dep't of Educ.*, No. 19-CV-334, Dkt. 36, at 22 (S.D.N.Y. May 9, 2019) ("Plaintiffs offer no rational, non-conclusory argument for why they should receive money that they would not have to pay back and to which they may not have a right at all." (quoting *Cohen*, 2018 WL 6528241, at *3)). In effect, Plaintiffs hope to use § 1415(j), a provision designed to maintain continuity of a child's education, to convert an IEP into a transient school voucher to be exercised by the parents unilaterally.

Plaintiffs' voucher theory is not supported by circuit precedent. The Second Circuit has long held that school districts retain some discretion and flexibility to make practical adjustments to a student's "educational placement," which includes transferring students between comparable schools offering the same services. *See Concerned Parents & Citizens for the Continuing Educ. at Malcolm X (PS 79) v. New York City Bd. of Educ.*, 629 F.2d 751, 753–55 (2d Cir. 1980) (holding that section 1415(b) would not be triggered by a decision to transfer the special education classes between two regular schools in the same district and noting that a contrary "interpretation of the [IDEA] would virtually cripple the Board's ability to implement even minor discretionary changes within the educational programs provided for its students"). Here, issuing a "stay-put" order, immediately after Plaintiffs unilaterally decided to transfer A.N. to iBrain, when iHope (which Plaintiffs had unilaterally chosen the year before) remains an available option, would allow the parents effectively to dictate where an IEP is to be implemented. Such a scheme deprives school districts of the flexibility afforded to them under *Concerned Parents*.[5]

---

[5] In this case, from a financial perspective, there may be little difference in the cost to the City of tuition reimbursement for iHope as opposed to iBrain, assuming iBrain is, in fact, an appropriate placement. But the legal proposition that Plaintiffs are advocating would not be so limited. If Plaintiffs were correct, parents could unilaterally move a child from a public school that is fully capable of providing a FAPE to a private school that they believe is also so capable and then demand payment of their private school tuition under the aegis of a stay-put order. That is contrary to a long line of IDEA precedent, which allows parents unilaterally to enroll a child in a private school and to obtain reimbursement of tuition only after they establish that the district's proposal did not

Plaintiffs' approach also risks undermining the very purpose of Section 1415(j), which is to ensure stability for the student. *See Murphy*, 297 F.3d at 199; *de Paulino*, 2019 WL 1448088, at *7. Common sense dictates that, to ensure some level of continuity of educational experience, the ultimate discretion to transfer a student's funding or placement cannot be wielded concurrently by the school district and the parents. Otherwise, the two sides could engage in an endless tug-of-war, each seeking to countermand the other, causing the student to be repeatedly reassigned or transferred. Under *T.Y.* and *Concerned Parents*, parents or guardians have a right to voice their preference regarding school selection, but school choice ultimately lies with the state or local education agency—provided that the selected school can provide a FAPE. *See T.Y.*, 584 F.3d at 420; *Concerned Parents*, 629 F.2d at 753–55.

Because Plaintiffs misread *T.Y.* and *Concerned Parents*, this Court agrees with IHO Rosken that § 1415(j) does not require the City to fund a student's attendance at a preferred, "substantially similar" school, at least not when the existing school is concededly able to service the student's IEP. *See Ventura De Paulino v. New York City Dep't of Educ.*, No. 19-CV-222, 2019 WL 2498206, at *3 (S.D.N.Y. May 31, 2019) ("This Court finds no legal basis whatsoever in statute, regulation, or case law to support Plaintiff's 'substantial similarity' proposition.").[6] Absent the City's chosen school being somehow unavailable or inadequate, Plaintiffs' argument

---

provide a FAPE and that the school they selected did. *See*, *e.g.*, *Sch. Comm. of the Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985), *Frank G. v. Bd. Of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006).

[6] Some state review officers, as a matter of practice, appear to have considered whether a unilateral placement by a parent is "substantially similar" to the previous program. *E.g.*, *Cruz*, 2019 WL 147500, at *3. The IDEA does not compel the review officers to do so. *Cruz* seemed to assume, without any analysis, the correctness of the state review officer's "substantial similarity" standard and remanded for factfinding on that issue. *See id.* at *10. Then, another district court, in *Navarro*, cited *Cruz*, again without further analysis, for the existence of the "substantial similarity" standard for determining when parents or guardians may transfer public funding. *See Navarro*, 2019 WL 2511233, at *4. This Court has not found any decision in this circuit that has actually interpreted § 1415(j) or Second Circuit precedent to allow parents to unilaterally force reallocation of funding to any "substantially similar" school or program of their choice.

that funding is portable collapses under its own weight. In essence, Plaintiffs want to divorce the term "placement" from any particular brick-and-mortar school when they want to move A.N.—and then graft a school-specific requirement back onto the definition once A.N. has been enrolled in the school of their choice—so as to compel the City to pay for whatever new school they choose. If the term "educational placement" under § 1415(j) is purely a functional definition and does not require A.N. to be placed at iHope, then, by the same logic, Section 1415(j) does not require the City to fund A.N.'s placement at iBrain. Thus, even assuming the Plaintiffs correctly interpret the phrase "educational placement" to refer merely to the level of educational services that A.N. must receive, the Court simply sees nothing in § 1415(j) that requires the City to accede to Plaintiffs' preferred school.

In sum, Plaintiffs' legal theory depends on an inverted reading of the Second Circuit's decisions and has no basis in the pendency provision of the IDEA. Because the Court sees no reason to disturb IHO Rosken's decision under 20 U.S.C. § 1415(j), the City's motion to dismiss is GRANTED.[7]

---

[7] Plaintiffs have asked the Court to decide their motion for a preliminary injunction before deciding the City's motion to dismiss. Dkt. 21. The order by which this Court decides the motions is immaterial to the outcome because, for the same reason that the Court is granting the City's motion to dismiss, Plaintiffs are not entitled to injunctive relief. As Judge Koeltl and Judge Furman have explained in their respective cases involving iBrain transferees, Section 1415(j) is inapplicable when, as here, there is no meaningful threat to the child's learning experience. *See Fiallos*, No. 19-CV-334, Dkt. 36 at 22; *Cohen*, 2018 WL 6528241, at *2. Absent an automatic injunction under § 1415(j), Plaintiffs are not entitled to a preliminary injunction under this Circuit's normal preliminary injunction standard because Plaintiffs cannot show irreparable harm—A.N.'s education is not at risk of disruption, and the only dispute is determining who pays his tuition and when. *See Fiallos*, No. 19-CV-334, Dkt. 36 at 23–24 ("There is no conceivable irreparable injury to be prevented by a preliminary injunction.").

### III. CONCLUSION

For the reasons discussed, the City's motion to dismiss, Dkts. 12–15, is GRANTED pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Clerk of Court is respectfully directed to terminate all pending motions and deadlines and close the case.

**SO ORDERED.**

**Date: August 2, 2019**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**