USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/07/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
DOROTHY NESKE and CHRISTOPHER :
NESKE, as Parents and Natural Guardians of :
A.N., and DOROTHY NESKE and :
CHRISTOPHER NESKE, Individually, :
: 19-CV-2933 (VEC)
        Plaintiffs, :
   -against- : ORDER
:
:
NEW YORK CITY DEPARTMENT OF :
EDUCATION, :
        Defendant. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

The parents and guardians of a minor, A.N., seek reconsideration of an order dismissing their action, which sought to compel the New York City Department of Education to fund A.N.'s attendance at the International Institute for the Brain ("iBrain"), a private school for children with special needs. Because Plaintiffs have not pointed to any controlling law or factual information that the Court has overlooked, Plaintiffs' motion is denied.

## BACKGROUND

The relevant facts and procedural history are fully set forth in this Court's original decision. *See Neske v. New York City Dep't of Educ.*, No. 19-CV-2933, 2019 WL 3531959, at *1–2 (S.D.N.Y. Aug. 2, 2019). Within 14 days of that decision, Plaintiffs moved for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Civil Rules for the Southern District of New York. Pl. Br. (Dkt. 39) at 2.

## DISCUSSION

"The standard for granting [] a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that

the court overlooked."[1] *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Sigmon v. Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) ("[A] party moving for reconsideration must set forth 'the matters or controlling decisions which counsel believes the Court has overlooked.'" (quoting Local Civil Rule 6.3)). As such, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Schrader*, 70 F.3d at 257. The movant also "may not advance new facts, issues, or arguments not previously presented to the Court." *Sigmon*, 229 F. Supp. 3d at 257 (citations omitted). A motion for reconsideration may be granted if movant demonstrates "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations and quotation marks omitted).

In their brief supporting reconsideration, Plaintiffs argue that the Court misapplied *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412 (2d Cir. 2009), and *Concerned Parents & Citizens for the Continuing Educ. at Malcolm X (PS 79) v. New York City Bd. of Educ.*, 629 F.2d 751 (2d Cir. 1980). Pl. Br. (Dkt. 39) at 3–4. In response to the Court's observation that Plaintiffs had taken *T.Y.*'s definition of "educational placement" "out of context," *Neske,* 2019 WL 3531959, at *6, Plaintiffs argue that context, in fact, does not matter. *See* Pl. Br. (Dkt. 39). at 4 ("Thus, regardless of the context, the *definition* of educational placement . . . is constant and does not change depending on whether it is being used by a school district or parent.") (emphasis in original). As the Court has previously explained, however, context is incredibly important because *T.Y.* stands for the proposition that "educational placement" must be defined in a manner that gives school districts, not parents, reasonable flexibility in choosing where educational

---

[1] The standard for reconsideration pursuant to Rule 59(e) is "identical" to that under Local Civil Rule 6.3 *Sigmon v. Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d 254, 256 (S.D.N.Y. 2017) (collecting cases).

services would be provided to students with disabilities. *See Neske*, 2019 WL 3531959, at *7. And, as the Court has also explained, a context-less definition would actually lead to instability of placement, which would undermine the very purpose of the pendency provision contained in the Individuals with Disabilities Education Act (IDEA). *See id.* ("Otherwise, the two sides could engage in an endless tug-of-war, each seeking to countermand the other, causing the student to be repeatedly reassigned or transferred."). In other words, Plaintiffs are merely relitigating an issue that the Court has already decided, rather than pointing to any controlling law that the Court has overlooked.

Perhaps sensing that context actually does matter, Plaintiffs next attempt to distinguish *T.Y.* by contending that, in this case, DOE did not offer iHope as a pendency placement, whereas the school district in *T.Y.* offered the parents two choices. *See* Pl. Br. (Dkt. 39) at 4–5. The Court, however, sees nothing in the *T.Y.* decision that compels school districts to offer parents multiple options, and Plaintiffs have not pointed to any authority for the proposition that school districts must "offer" a pendency placement at all. Rather, as the language in the pendency provision indicates, the "pendency placement"[2] is generally not something to be offered but is instead the default placement that already exists, by virtue of an implemented IEP or another prior placement that was mutually agreed-upon.[3] *See* 20 U.S.C. § 1415(j) ("[T]he child shall

---

[2] The term "pendency placement" is used interchangeably with the statutory term, "then-current educational placement." *See Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696–97 (S.D.N.Y. 2006).

[3] Because a "pendency placement" is the default placement, rather than something to be offered by the school district, Plaintiffs' argument that the Court based its decision on the "false premise" that the Defendant chose iHope as the pendency placement is misplaced. The Court never concluded that Defendant offered iHope as a pendency placement—that result was determined by the original Impartial Hearing Officer (IHO), who issued the Findings of Fact and Decision that agreed with *Plaintiffs'* original placement of A.N. at iHope and setting forth A.N.'s program there. *See Neske*, 2019 WL 3531959, at *1. By virtue of the un-appealed decision of the IHO, the program at iHope became the last implemented and last agreed-upon placement. Far from mistakenly holding that Defendant offered iHope as a placement, the Court specifically noted that Defendant had proposed a public-school placement for 2018–19, and that Plaintiff could have enforced iHope as the "then-current educational placement" pursuant to the pendency provision, rather than unilaterally withdrawing A.N. from iHope and insisting that they were entitled to pendency placement at iBrain. *See Neske*, 2019 WL 3531959, at *1 n.1.

3

remain in the then-current educational placement."). Courts in this circuit have therefore ascertained the pendency placement by "look[ing] to: (1) 'the placement described in the child's most recently implemented IEP'; (2) 'the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked'; or (3) 'the placement at the time of the previously implemented IEP.'"[4] *See Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (quoting *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004)). And as this Court noted in the original decision, when a child has an implemented IEP, there is no need to examine the "operative placement."[5] *See Neske*, 2019 WL 3531959, at *5 n.3 (citing *Carrilo v. New York City Dep't of Educ.*, 384 F. Supp. 3d 441, 464 (S.D.N.Y. 2019) ("Courts tend to rely on the 'operative placement' factor in circumstances in which there was no prior-implemented IEP that might guide a determination of a 'current educational placement.'") (internal citation omitted)). In other words, while nothing forbids the school district and the parents from agreeing to a placement pending litigation, the school district is not required to propose an interim placement because, by default, courts will determine the "pendency placement" using the child's education history.

Next, Plaintiffs cite to the holding in *Carrilo*, which is not controlling, and which the Court declined to follow. *See* Pl. Br. (Dkt. 39) at 5. Plaintiffs also cite to *Soria v. New York City Dep't of Educ.*, 397 F. Supp. 3d 397 (S.D.N.Y. 2019), *see* Pl. Br. (Dkt. 39) at 6, another non-

---

[4] As they did in their original briefing, Plaintiffs make much hay of the idea that the lack of a "pendency placement" is an "impossible result," but that proposition, even if accepted, does nothing to advance Plaintiffs' case. Pl. Br. (Dkt. 39) at 9 (quoting *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 325 (S.D.N.Y. 2005) (applying same test as set forth in *Doe* and *Mackey*)). A.N. does have a pendency placement— it is the program set forth in the FOFD rendered by IHO Sharyn Finkelstein, who approved Plaintiffs' choice of iHope.

[5] For that reason, Plaintiffs' argument that the Court failed to consider "operative placement" is meritless. *See* Pl. Br. (Dkt. 39) at 2-3, 8–9.

controlling decision, which agreed with *Carrilo* and was issued after this Court's decision. Because these cases are neither controlling nor overlooked, they cannot support a motion for reconsideration and instead simply reflect yet another attempt to relitigate what this Court has already decided.

Plaintiffs also make two other arguments that are far afield and non-dispositive. They take issue with the Court's characterization of Plaintiffs' argument, made in their opposition to Defendant's motion to dismiss, that the Court is required to accept as true their conclusory allegation that iHope and iBrain are substantially similar. Pl. Br. (Dkt. 39) at 6. Nevertheless, that is exactly what they argued in their opposition memorandum. *See* Pl. Opp. to Mot. to Dismiss (Dkt. 24) at 4 ("Therefore, taking Plaintiffs' allegation concerning the substantial similarity of the two educational programs as true, as this Court must for purposes of DOE's motion . . . ."). Plaintiffs now contend that their allegations are far from conclusory because of testimony submitted in support of their motion for a preliminary injunction—but that is neither here nor there, as the Court resolved the case on Defendant's motion to dismiss Plaintiffs' complaint. Plaintiffs also take issue with the Court's recitation of the reality (a quotation of two other judges in this district) that, if Plaintiffs were to receive court-mandated funding, they would not be required to reimburse the school district if their action were ultimately meritless. *See* Pl. Br. (Dkt. 39) at 9–10. Plaintiffs do not dispute the accuracy of the Court's statement. And, in any event, the availability *vel non* of reimbursement provides context but it is not critical to the Court's conclusion, which hinges instead on the Second Circuit's decisions in *T.Y.* and *Concerned Parents*.

Finally, Plaintiffs make two related arguments—Defendant did not show that iHope was available as a placement for 2018–19,[6] and Defendant did not make a *prima facie* showing that whatever pendency placement it offered was satisfactory. *See* Pl. Br. (Dkt. 39) at 6, 8–9. Aside from the fact that a "pendency placement" is generally pre-determined by the factual circumstances, rather than offered by the Defendant, as discussed above, Plaintiffs gravely misunderstand the compromise struck by the IDEA's pendency provision. Section 1415(j) "requires a school district to continue funding whatever educational placement was *last agreed upon* for the child until" the school district and the parents can resolve their disagreements. *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014) (emphasis added). The idea of the "last agreed upon" placement rests on the common-sense notion that a presumptively appropriate, interim placement for all interested parties is one that was previously acceptable to the parents and to the school district and, at least at one point, provided the child with an appropriate education. There simply is nothing in the language of the pendency provision that requires the parents and the school district to undergo a separate exercise anew to

---

[6] The Court's original decision agreed with the Impartial Hearing Office that Plaintiffs may not invoke the "substantial similarity" standard unless the record shows that the prior placement, iHope, is unavailable. *See Neske*, 2019 WL 3531959, at *1, 7. The Impartial Hearing Officer was clear on this point, Plaintiffs did not challenge it in their original papers, and they cannot now raise a new issue on a motion for reconsideration, to flip both the standard and burden from proof of unavailability to proof of availability. In any event, the Court has ruled on this issue, and Plaintiffs have not cited any controlling authority to the contrary.

Plaintiffs cite N.Y. Educ. Law § 4404(c) to support their argument that the burden is *always* on the school district, including during a pendency dispute, but that cannot be the case. *See* Pl. Br. (Dkt. 39) at 8. Even Plaintiffs acknowledge that they would bear the burden of proving "substantial similarity," if substantial similarity were relevant. *Id.* at 2 ("Plaintiffs were entitled to enroll A.N. at iBrain, so long as they . . . establish that the two programs are substantially similar."). Plaintiffs never alleged and nothing in the record suggests that iHope, the school the parents selected and as to which the IHO concurred was appropriate, was unavailable for the 2018–19 term. Even now, Plaintiffs do not even attempt to suggest otherwise. Because the "substantial similarity" standard is irrelevant on these facts, Plaintiffs' contention that the Court should have undertaken an independent assessment of the similarity between iHope and iBrain is without merit. *See Neske*, 2019 WL 3531959, at *6 n.4 (explaining that if the Court agreed that the substantial similarity standard were relevant, then the Court would have remanded to the agency for factfinding).

ascertain the propriety of the last agreed upon placement before it can serve as a temporary placement.

In sum, Plaintiffs' motion for reconsideration is an effort to relitigate settled issues, without pointing to any controlling law or fact that the Court overlooked when issuing the original decision.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion for reconsideration is DENIED. The Clerk of Court is respectfully directed to terminate docket entry 38.

**SO ORDERED.**

**Date: November 7, 2019**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**